AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>6720 Leonard Street<br>Philadelphia, Pennsylvania,<br>further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)   Case No.  18-   965   -M |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

See attached Affidavit which also incorporates Attachments A and B.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan Baker, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  6/13/2018

_____
*Judge's signature*

City and state:  Philadelphia, Pennsylvania

Honorable Linda K. Caracappa
*Printed name and title*

*/8- 965 M*

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Bryan J. Baker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been
   since July, 2015. I am currently assigned to the FBI White Collar Crimes Branch in
   Philadelphia, Pennsylvania, whose mission includes the investigation crimes involving
   Fraud Against the Government. During that time, I have been involved in fraud and
   public corruption investigations which involved criminal violations including Title 18,
   United States Code, Section 1341 (Mail Fraud), Section 1343 (Wire Fraud), Section 1951
   (Hobbs Act Extortion), Section 666 (Theft or Bribery Involving Federal Programs), and
   Aggravated Identity Theft (Title 18, United States Code, Section 1028(A)). I am a law
   enforcement officer of the United States within the meaning of Title 18 United States
   Code, Section 2510(7), in that I am empowered by law to conduct investigations and to
   make arrests for federal felony offenses.

2. Prior to joining the FBI, I was employed as an Information Technology Auditor for seven
   years in the private sector. During my employment, I was responsible for managing the
   audits of multiple computer systems and software programs. I have also attended FBI
   training concerning computer crime investigation. Based upon my training and
   experience, I am familiar with the means by which individuals use computers and
   information networks such as the Internet to commit various criminal offenses, and I have
   participated in the execution of searches and seizures pursuant to warrants authorizing the
   seizure of evidence related to computer crimes.

3. I, along with Internal Revenue Service Criminal Investigator (IRS-CI) Angelo Horiates,
   are jointly investigating a criminal conspiracy, involving identified and unidentified

1

persons in Philadelphia who are conspiring to unlawfully use the personal identifiable

information of Puerto Rican United States citizens for the purpose of filing fraudulent

federal tax returns to steal funds from the United States Treasury. The investigation has

resulted in grand jury indictments against other persons for Theft of Public Money (Title

18, United States Code, Section 641); Conspiracy to Defraud the United States (Title 18,

United States Code, Section 371); and Aggravated Identity Theft (Title 18, United States

Code, Section 1028(A)).

4. Except as otherwise noted, the information contained in this affidavit is known personally

to me from the examination of records, discussions with witnesses and other special

agents, and from personal observations by me or other law enforcement officers. I am

thoroughly familiar with the facts and circumstances of this investigation and all

information contained in this affidavit is known to be true and correct to the best of my

knowledge. Because this affidavit is submitted for the limited purpose of establishing

probable cause to apply for a search warrant, it does not set forth each and every fact

learned by me or other investigators during the course of this investigation.

5. This affidavit seeks authorization to search the row home located at 6720 Leonard Street,

Philadelphia, Pennsylvania, further described in Attachment A, for evidence of violations

of Theft of Public Money (Title 18, United States Code, Section 641); Conspiracy to

Defraud the United States (Title 18, United States Code, Section 371); and Aggravated

Identity Theft (Title 18, United States Code, Section 1028(A)), as further described in

Attachment B.

## BACKGROUND ON IDENTITY THEFT TAX REFUND SCHEME

6. An illegal identity theft tax refund scheme is consistent with similar schemes known to the FBI and IRS-CI. This type of investigation involves the filing of fraudulent income tax returns, primarily, although not exclusively, utilizing Social Security Numbers (SSN) issued in Puerto Rico for Puerto Ricans without their knowledge. In general, names and SSNs are stolen from individuals in Puerto Rico and then sold to end-users in the United States. The names and SSNs are then used to fabricate Forms W-2 that reflect fictitious wage and withholding amounts from legitimate employers and are used to prepare income tax returns generating substantial refunds.

7. The SSNs used to file the fraudulent tax returns reflect prefixes between the numbers 581 and 584 or 596 and 599 which indicate the SSN was issued in Puerto Rico. The significance of the use of Puerto Rican SSNs is that residents of Puerto Rico have the option of filing a US Individual Income Tax Return, but are not obligated to do so.

8. Once the tax returns have been filed, the scheme relies on the perpetrators gaining access to the refund checks either through complicit individuals who allow their addresses to be used, or through others who steal or collect the checks, such as postal carriers. When the checks have been obtained, the scheme then relies on those checks being converted to cash which often occurs with the assistance of those who have the ability to cash the checks, such as complicit check cashers, or individuals utilizing business bank accounts to deposit the checks and withdrawal the proceeds.

## IRS/FBI INVESTIGATION OF ARLENY REYES NUNEZ

9. ARLENY REYES NUNEZ conspired with others, whose identities are both known and unknown to your affiant, to operate an illegal enterprise that caused federal income tax

3

returns to be filed with the IRS which falsely claimed entitlements to a refund.  The investigation shows the following:

a.  On June 11, 2014, Karla Pena was interviewed by IRS/FBI.  Pena identified REYES NUNEZ as a person who was involved in a stolen identity refund fraud scheme.  In particular, Pena stated that she was asked by REYES NUNEZ to open a bank account in the name of Reyes Multiservice for the purpose of depositing fraudulently obtained federal tax refunds.  Pena, who worked at Wachovia Bank at the time (now known as Wells Fargo), opened an account at REYES NUNEZ's direction.  Pena helped deposit these refund checks into the Reyes Multiservice account and other accounts Pena had access to.  Pena received a cut of each of the checks she helped deposit.  In the fall of 2017, Pena was sentenced by the Honorable Judge Harvey Bartle III for her role in joining this conspiracy to commit theft of public funds.

b.  IRS/FBI obtained the bank records for the Reyes Multiservice account opened by Pena and REYES NUNEZ as Wachovia Bank.  Your affiant confirmed that multiple federal refund checks were deposited into Reyes Multiservice.

c.  A further review of the IRS tax records associated with the refund checks deposited into the Reyes Multiservice account showed that the refund checks were issued based on fraudulent returns.  In particular, the false tax returns submitted to the federal government, in general, were submitted in the names of stolen identities of Puerto Rican citizens and used falsified W-2s.  Moreover, many of the false tax returns identified in the account, were filed using an

4

Electronic Filing Identification Number (EFIN) issued to REYES NUNEZ by the IRS. An EFIN is used by a tax preparer to electronically file tax returns.

    d.   On September 30, 2015, IRS/FBI interviewed REYES NUNEZ. REYES NUNEZ admitted to owning Reyes Multiservice, which conducted tax preparation, and using the account to cash checks without a license to do so. REYES NUNEZ confirmed that she had applied for and received an EFIN.

10.  On March 26, 2018, your affiant received information from a Person #1, whose identity is known to your affiant but will not be disclosed here. Person #1 was arrested for drug offenses in violation of federal law. During an interview, Person #1 reported that Person #1 had recently been inside the home of 1523 Elbridge Street in Philadelphia, PA. Person #1 reported that while in the home, Person #1 found copies of birth certificates in a door jamb in a closet in the residence. Person #1 reported that REYES NUNEZ previously lived in this residence at 1523 Elbridge Street. Person #1 voluntarily turned over these documents to law enforcement.

    a.   A review of the documents determined that they were photocopies of the birth certificates and social security numbers of eight Puerto Rican citizens.

    b.   The documents were sent for forensic analysis by the IRS. In May 2018, your affiant received results from the lab which concluded that the fingerprints of REYES NUNEZ were on at least two of the documents that have been analyzed thus far.

    c.   As described in this affidavit, REYES NUNEZ used Puerto Rican identities to perpetrate the tax refund fraud scheme.

5

11. In summary, the investigation shows that REYES NUNEZ created the business Reyes Multiservice for the purpose of filing fraudulent tax returns and obtaining the federal refund checks. The tax returns contained the identities and SSNs of United States citizens, including residents of Puerto Rico, which had been obtained by and unlawfully used by ARLENY REYES NUNEZ and other co-conspirators. REYES NUNEZ physically possessed documents containing the personal identifiable information of Puerto Rican citizens as well.

## GRAND JURY INDICTMENT 18-246

12. On June 12, 2018, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment, docketed as 18-246, charging ARLENY REYES NUNEZ a/k/a "Glory DeJesus" (dob: 11/16/1978), with Count One conspiracy to defraud the federal government, in violation of Title 18, United States Code, Section 371, Count Two theft of government property, in violation of Title 18, United States Code, Section 641, and Count Three operation of an unlicensed money transmitter business, in violation of Title 18, United States Code, Section 1960. The indictment arises from the conduct listed in this affidavit.

13. An arrest warrant was issued on June 12, 2018 for the arrest of REYES NUNEZ related to the above indictment.

## EXECUTION OF ARREST WARRANT

14. On June 13, 2018, IRS and FBI attempted to execute the arrest warrant of REYES NUNEZ at her last known address of 6720 Leonard Street Philadelphia Pennsylvania,

6

further described in Attachment A. This location was believed to be her current address for the following reasons:

    a.  A search of a law enforcement database showed REYES NUNEZ's last known residence to be 6720 Leonard Street.

    b.  In the fall of 2018, your affiant served a target letter into the hands of REYES NUNEZ at 6720 Leonard Street.

    c.  On May 2, 2018, law enforcement conducted physical surveillance of 6720 Leonard Street. Law enforcement reported observing REYES NUNEZ opening the front door of 6720 Leonard Street.

    d.  On May 25, 2018, your affiant conducted physical surveillance of the location to determine REYES pattern of life and if she was living there. Your affiant observed that shortly before 8 a.m. school-aged children exiting the home and leaving in a dark blue Volvo. Your affiant knows that REYES NUNEZ has school aged children.

15. Upon execution of the arrest warrant the morning of June 13, 2018, your affiant observed that no one was in the house or garage. The house appeared to be mostly vacant, but your affiant did observe some candles, boxes, and other scattered household items remaining behind. It appeared that REYES NUNEZ and her family had recently moved out.

16. Ben Chen, the property manager of the Leonard Street address, was contacted. Chen confirmed that he observed REYES NUNEZ move out of the property two days ago and into a new home she had purchased in Philadelphia. Chen advised that REYES NUNEZ had paid rent through the end of June 2018.

7

17. During the execution of the arrest warrant, your affiant observed in the garage of 6720 Leonard Street multiple boxes with open lids, at least two of which contained hundreds of documents.

    a.  From my vantage point, I observed the following documents:

        i.  A copy of what appeared to be a blank check issued by UMB.  Your affiant is aware that UMB is a third party preparer of federal government refund checks.  UMB sends the refund check to the tax preparer to be printed out on blank UMB checks issued to the tax preparer.  Another box contained a printer.

        ii.  One of the boxes contained multiple tabbed manila folders.  One of the tabs listed the name "Dilenia Germosen" who your affiant recognizes as an unindicted co-conspirator in this scheme.

        iii.  Another tabbed folder was labeled "Nydia Amador" which your affiant recognized as being a person whose identity was found in tax paperwork associated with Reyes Multiservice.  Reyes Multiservice was the business that REYES NUNEZ owned and also used to file fraudulent returns.

        iv.  Another document appeared to be a sample of a tax document and stated "Sample Tax Payer".

18. As described in this affidavit, your affiant knows that a fraudulent tax preparation business requires the misuse of personal identifiable information of others.  This affidavit provides probable cause to believe that documentation relating to a stolen identity tax refund fraud scheme in violation of federal law, as described in Attachment B, will be located in the garage and elsewhere at the location of 6720 Leonard Street.

## CONCLUSION

19. Based on the facts set forth above, there is probable cause to believe that the residence located at 6720 Leonard Street, Philadelphia, Pennsylvania, contains evidence of the criminal violations of Theft of Public Money (Title 18, United States Code, Section 641); Conspiracy to Defraud the United States (Title 18, United States Code, Section 371); and Aggravated Identity Theft (Title 18, United States Code, Section 1028(A)).

20. Accordingly, I respectfully request the issuance of a search warrant for the residence located at 6720 Leonard Street, Philadelphia, Pennsylvania.


Bryan K Baker
Special Agent
Federal Bureau of Investigation


Sworn and subscribed before me
this **13** day of JUNE, 2018.


HONORABLE LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

## PREMISES TO BE SEARCHED

### 6720 Leonard Street, Philadelphia, Pennsylvania 19149

The premises is located on a street whose entrance is marked by a sign identifying the street as "Leonard Street." Leonard Street runs between Harbison Avenue and Knorr Street. Traveling from Harbison Avenue, the home is located on the left hand side of the street, middle of the block. The home has a brick-face front with a front lawn and a silver front door. The building is a row home, single family, 1st floor window, and second floor windows. The home is approximately 1,200 square feet.



## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

Evidence of violations of Theft of Public Money, Title 18, United States Code, Section 641, Identity Theft, Title 18, United States Code, Aggravated Identity Theft, Title 18, United States Code, Section 1028(A), and Conspiracy to Defraud The United States, Title 18, United States Code, Section 371 to include:

1. For the period January 1, 2010 to the present, all documents, records and electronic data files maintained by ARLENY REYES NUNEZ (NUNEZ) concerning or pertaining to the following:

   a. Records relating to I/Ds, computer printouts of I/Ds, machines that manufacture I/Ds, I/Ds in NUNEZ's name or have her photo, photographs of individuals, copies of checks, lists of driver's license numbers, information about other associates/participants, and other documents.

   b. Bank account statements, checks, deposit items, checkbook registers, other debit and credit items, wire transfer information, safe deposit box information and other financial records.

   c. Credit card statements and receipts.

   d. Federal, state and local tax records and returns and all documentation used in the preparation of any tax returns or filings.

   e. Accounting records, customer records, purchase orders, work logs, notes, memoranda, correspondence, journals, ledgers, invoices, receipts, personnel records, and administrative records pertaining to flooring

contracting business.

f.   Electronic systems used to maintain records, if records cannot be imaged.

g.   Communication records (including but not limited to email concerning, relating or referring to the flooring contracting business and check cashing activity) and telephone account statements.

h.   United States Treasury checks.

i.   All copies of United States Treasury checks deposited into bank accounts.

j.   US Currency.

k.   All notes, memoranda, ledgers, or other documentation pertaining to receipt and distribution of US Treasury checks and their proceeds.

l.   All list of names, Social Security numbers, copies of identifications, etc.